JUDGE BATTS

08 CIV 3985

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JUICY COUTURE, INC.

  *Plaintiff,*

v.

VICTORIA'S SECRET STORES BRAND
MANAGEMENT, INC., VICTORIA'S
SECRET STORES, L.L.C., VICTORIA'S
SECRET DIRECT BRAND
MANAGEMENT, L.L.C.,

  *Defendants.*

Civ. No.



---

## COMPLAINT

Plaintiff Juicy Couture, Inc. ("Juicy Couture" or "plaintiff") brings this action

against defendants Victoria's Secret Stores Brand Management, Inc., Victoria's Secret Stores,

L.L.C, and Victoria's Secret Direct Brand Management, L.L.C. ("Victoria's Secret" or

"defendants") and for its Complaint alleges as follows:

### NATURE OF THE CASE

1.     This action is for the deliberate use of false designations of origin and false

descriptions and representations, and unfair competition in violation of Section 43(a) of the

United States Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a); for unfair and deceptive

trade practices in violation of New York General Business Law § 349; and for related claims of

trade dress infringement and unfair competition in violation of the common law of the State of

New York.

## JURISDICATION AND VENUE

2.      This Court has original jurisdiction over the subject matter of this action pursuant

to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367 as it involves substantial

claims arising under the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et

seq., together with related claims under New York law.  This Court also has jurisdiction over this

action pursuant to 28 U.S.C. § 1332(a)(1) as it involves citizens of different states and the

amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      This Court has personal jurisdiction over defendants because defendants have

transacted and are transacting business within the State of New York from which plaintiff's

claims arise.

4.      Venue is proper within this judicial district under 28 U.S.C. § 1391(b) and (c) and

§ 1400(a) because defendants may be found in this district and a substantial part of the events

giving rise to the claims occurred in this district.

## THE PARTIES

5.      Plaintiff, Juicy Couture, Inc. is a California corporation with offices at 1440

Broadway, New York, NY 10018.

6.      Upon information and belief, defendant Victoria's Secret Stores Brand

Management, Inc. is a Delaware corporation having a principal place of business at Four Limited

Parkway, Reynoldsburg, OH 43068.

7.      Upon information and belief, defendant Victoria's Secret Stores, L.L.C. is a

Delaware limited liability company having a principal place of business at Four Limited

Parkway, Reynoldsburg, OH 43068.

8.    Upon information and belief, defendant Victoria's Secret Direct Brand Management, L.L.C. is a Delaware limited liability company having a principal place of business at Four Limited Parkway, Reynoldsburg, OH 43068.

## JUICY COUTURE BRANDS

9.    The company which has been known as Juicy Couture, Inc. since 1997 was founded in 1989 by designers Pamela Skaist Levy and Gela Nash Taylor.  It began as a clothing brand made out of their homes.  Today, Juicy Couture's clothing and other products are sold in over 30,000 retail establishments worldwide.  In 1996, Juicy Couture adopted the JUICY trademark to brand its apparel line and shortly thereafter began using the JUICY trademark on underwear, jeans, shorts, shirts, skirts, tops and jackets, as well as other goods.  The JUICY brand was extremely well received and became a fashion sensation.

10.    For over ten years, Juicy Couture, by itself, and/or through its affiliates or related companies, (collectively "Juicy Couture") has been using the distinctive JUICY trademark in connection with apparel and related products and services.

11.    In addition to its registered trademarks, Juicy Couture has numerous common law trademarks.  With many of these common law trademarks, including SUGAR AND SPICE AND EVERYTHING JUICY, EAT CANDY, TASTES LIKE COUTURE, LET THEM EAT COUTURE and LIVE FOR SUGAR, Juicy Couture has been regularly using icons related to candy and sweets in its designs and marketing since its inception.  See examples below.

  

12.    Over the years, Juicy Couture has spent hundreds of millions of dollars advertising and promoting its products and services in interstate commerce throughout the United States, including in this district.  Sales of its products throughout the country, including in this district, exceeded $420 million in 2007.

13.    Juicy Couture's products have been sold throughout the United States at over 840 specialty stores and over 280 department stores including Barney's, Bloomingdale's, Bergdorf Goodman, Nordstroms, Neiman Marcus, Saks, Henri Bendel, Lisa Kline, and Fred Segal.  Juicy Couture's products are also sold online at www.juicycouture.com.  In 2006 and 2007, Juicy Couture's swimwear line was also available in defendants' and their affiliates' catalogs and on defendants' and their affiliates' websites.

14.    Since inception of the JUICY brand in 1996, Juicy Couture has marketed its products using primary icons such as dogs, crowns, hearts, shields, and ivy wreaths and secondary icons such as sweets, fruits, tiaras, and fleur de lis.  Juicy Couture's aesthetic attempts to combine a collegiate preppy look with influences of Victorian royalty.  Many of Juicy Couture's items bear the slogan "Love G&P", standing for Gela and Pamela, the Juicy Couture founders.  Pink has been Juicy Couture's signature color since its inception.  Juicy Couture has also used packaging shaped like books and containing apparel as a trade dress.  See below for examples of these themes.

  

  

15.    One of Juicy Couture's most famous innovations was introducing logos across the seat of pants, a design element that has earned it some notoriety and is also strongly identified with its brand.

16.    In addition to its many primary and secondary icons, Juicy Couture has carefully designed its stores and selling spaces to match the aesthetic of its brand.  For example, Juicy Couture's stores and selling spaces combine antique elements such as oriental rugs and Victorian style furniture with sleek modern elements such as Juicy Couture's signature pink color and transparent countertops.

### JUICY COUTURE'S SWEET SHOPPE TRADE DRESS

17.    Beginning in 2005, Juicy Couture began designing packaging for its clothing in a distinctive candy shape.  The line of packaging, named the "Sweet Shoppe" by Juicy Couture, is unusual and fanciful and designed to be associated with the word "Juicy."  The packaging is intended to, and does, uniquely identify Juicy Couture as the source of the products and therefore also serves as a trade dress.  Furthermore, the Sweet Shoppe trade dress builds on a long line of

creative packaging and products that have strongly identified Juicy Couture with playful and unexpected design in the minds of consumers. The Sweet Shoppe trade dress is highly distinctive and unique in the marketplace and Juicy Couture is aware of no third parties using similar trade dress for apparel.

18.    Juicy Couture's first item packaged in its Sweet Shoppe trade dress was a set of socks contained in a cylindrical wrapper, tied at either end with string or ribbon and designed to resemble a candy roll with socks rolled within (the "Candy Roll Trade Dress"). The Candy Roll Trade Dress, pictured at right, was developed in December 2005 and samples



were ordered from the manufacturer around the same time.   Juicy Couture began providing the Candy Roll Trade Dress to prospective wholesale buyers and at trade shows in May 2006. Both the manufacturing requests and the wholesale distributions created an opportunity for designers outside of Juicy Couture to see plaintiff's latest trade dress. The item debuted in stores in September 2006.

19.    In December 2006, Juicy Couture designed additional packaging for its Sweet Shoppe trade dress and samples were ordered from the manufacturer around the same time. The new packaging designs were distributed to prospective wholesale buyers and at trade shows in May 2007 and shipped to stores on September 15, 2007. The new trade dress included:

6

A.  The Candy Roll Trade Dress:  Similar candy roll packaging to that designed in 2005, except with other apparel, instead of socks, rolled within.  Pictured at right.



B.  The Lollipop Trade Dress:  Lollipop packaging consisting of apparel wrapped and mounted on a stick to resemble a lollipop. Pictured at right.



C.  The Bon Bon Trade Dress:  Bon bon packaging consisting of apparel wrapped and tied at either end with string or ribbon to resemble a bon bon.  Pictured at right.



D.  The Cupcake Trade Dress:  Cupcake packaging consisting of apparel placed in small, pleated containers.  Pictured at right.





20.     Also in December 2006, Juicy Couture developed the "Ice Cream Cone Trade Dress", which consisted of apparel placed in a container shaped like an ice cream cone, and ordered samples from the manufacturer around the same time.  The Ice Cream Cone Trade Dress was provided to prospective wholesale buyers and at trade shows in August 2007.  The Ice Cream Cone Trade Dress was shipped to stores in January 2008.

21.     The trade dress described in paragraphs 18, 19, and 20 is collectively referred to as the "Sweet Shoppe Trade Dress."  The Sweet Shoppe Trade Dress is physically and functionally separate from the product it contains.  The Sweet Shoppe Trade Dress is nonfunctional and serves a source-identifying role because of its inherent distinctiveness. Purchasers are easily able to identify such products as originating from Juicy Couture.

22.     In addition to the Sweet Shoppe Trade Dress discussed in paragraphs 18, 19, and 20, Juicy Couture has designed a number of other candy-related packages for its Sweet Shoppe line.  Some of the packaging was never used commercially and other package designs are planned for release in the near future.

23.     Juicy Couture has also designed and sold products, like charm bracelets and jewelry, for its Sweet Shoppe line.  Shaped like ice cream cones, cupcakes, and other sweets, the products reinforce the Sweet Shoppe Trade Dress as a branding element for Juicy Couture.

24.     Products packaged in Juicy Couture's Sweet Shoppe Trade Dress have been sold in major retail stores across the country, including Bloomingdales, Neiman Marcus, and Nordstroms, as well as through Juicy Couture's own stores and website.  Juicy Couture has sold

tens of thousands of items packaged in the Sweet Shoppe Trade Dress amounting to millions of dollars in sales. Furthermore, Juicy Couture and its retailers have spent hundreds of thousands of dollars on advertising the Sweet Shoppe line. Examples of the marketing materials are shown below.

  

25.     The source identifying appearance of Juicy Couture's Sweet Shoppe Trade Dress constitutes the protected property of Juicy Couture.

### DEFENDANTS' UNLAWFUL USE OF JUICY COUTURE'S TRADE DRESS

26.     Upon information and belief, defendants are in the business of manufacturing, producing, selling, and distributing clothing, including underwear, swimwear, sleepwear, and sweat pants.

27.     Upon information and belief, in addition to their own brands, defendants have carried other brands in their stores, including Betsey Johnson, D&G, Chantal Thomass and Intimissmi Intimates. Defendants have also carried brands such as Ugg, Lucky, Michael Kors, Thierry Mugler, Jessica Simpson, Steve Madden, Guess, and, at one time, swimwear from Juicy Couture.

28.    Upon information and belief, defendants launched a new brand, "Pink", under the Victoria's Secret label. Victoria's Secret first used Pink in 2001 as the name of a fragrance. The Pink brand was expanded to encompass clothing and accessories, which were not fully available in defendants' stores until the fall of 2004. Free-standing Pink stores began opening in 2006. The products and marketing of Pink appear to be aimed at young women with a particular emphasis on collegiate themes.

29.    Upon information and belief, defendants based much of their marketing and brand strategy for Pink on elements used by Juicy Couture. Pink uses icons similar in appearance to Juicy Couture's branded and source identifying icons, in particular dogs, crowns, hearts, shields, and ivy wreaths. Pink has introduced the slogan "Love Pink" similar to Juicy Couture's "Love G&P". Pink has applied slogans across the seat of pants which famously originated with Juicy Couture and identifies its brand. Pink stores incorporate many elements of Juicy Couture's stores including oriental rugs and Victorian style furniture contrasted with modern elements like Juicy Couture's signature pink color and transparent table-top displays. See photos below for a comparison of many of these elements.



Juicy Couture's signature tracksuit



Defendants' sweatsuit



Juicy Couture's logo



Defendants' logo



Juicy Couture's logo



Defendants' logo



Juicy Couture's crown & love G&P



Defendants' logo w/ crown & love pink



Juicy Couture's store



Defendants' store

30.    Upon information and belief, defendants have also imitated the design of Juicy Couture's products like robes, bathing suits, tote bags, calling cards, and coin purses. Pink has sold packaging that resembles a book that opens to contain its products. See photo chart below for a comparison of many of these items.

 

| Juicy Couture's swimwear | Defendants' swimwear |

 

| Juicy Couture's book packaging | Defendants' book packaging |



Juicy Couture's robe



Defendants' robe



Juicy Couture's beach bag



Defendants' beach bag



Juicy Couture's calling cards



Defendants' calling cards

31.    Although Juicy Couture has not, and is not currently, alleging trademark or trade dress infringement for many of the icons, elements, and products discussed above, the consistent similarity between defendants' icons, elements, products, and marketing strategy and Juicy Couture's icons, elements, products, and marketing strategy is evidence that the similarities are not inadvertent and are designed to capitalize on the success of Juicy Couture.

32.    Upon information and belief, defendants began introducing a line of products featured in candy-shaped packaging in October 2007.  Defendants' candy-shaped packaging embodies the same elements as Juicy Couture's Sweet Shoppe Trade Dress.  No third parties are using a similar trade dress.

33.    Defendants' products are advertised, promoted, and marketed in the same channels of trade as Juicy Couture's products in the United States, including in this district.

34.    Defendants' packaging first appeared and was sold after Juicy Couture's Sweet Shoppe Trade Dress was publicly shown and sold.  Despite the nearly limitless range of unique packaging ideas available, defendants have released packaging that copies the look and overall appearance of Juicy Couture's previously released Sweet Shoppe Trade Dress.  Defendants' packaging includes:

A.  Candy roll packaging consisting of apparel contained in a cylindrical wrapper, tied at either end with string or ribbon and designed to resemble a candy roll.


Juicy Couture's Candy Roll Trade Dress


Defendants' candy roll packaging

B.  Lollipop packaging consisting of apparel wrapped and mounted on a stick to

resemble a lollipop.





Juicy Couture's Lollipop Trade Dress          Defendants' lollipop packaging

C.  Bon bon packaging consisting of apparel wrapped and tied at either end with

string or ribbon to resemble a bon bon.





Juicy Couture's Bon Bon Trade Dress          Defendants' bon bon packaging

D. Ice cream cone packaging consisting of apparel placed in a container shaped like an ice cream cone.



Juicy Couture's Ice Cream Cone Trade Dress



Defendants' ice cream cone packaging

35.    Upon information and belief, products in defendants' candy-shaped packaging are sold in interstate commerce, including in this district, through their Pink brand and in Pink stores. While some of defendants' products carry the name Victoria's Secret, the brand identifier is often extremely small in comparison to the other elements, including the name Pink.  Some of the candy-shaped packaging does not contain the Victoria's Secret brand name at all.

36.    Upon information and belief, defendants' candy-shaped packaging is deliberately copied from Juicy Couture's Sweet Shoppe Trade Dress.  In copying Juicy Couture's distinctive and unique trade dress, defendants crossed the line from design imitation to trade dress infringement.  Because of the source identifying function of Juicy Couture's packaging and the striking similarities, the defendants packaging is likely to deceive consumers as to the origin of the products contained within.

37.    Upon learning of defendants' infringing candy-shaped packaging, Juicy Couture's in-house counsel wrote to defendants' parent company and informed it of plaintiff's rights in the specific candy-shaped trade dress discussed in paragraph 34, *supra*, and advised defendants and their parent company that the use of the trade dress infringes plaintiff's rights.  Plaintiff's

attorney further requested that defendants cease all use of the infringing trade dress. Defendants have refused to comply with plaintiff's requests.

38.    Defendants' use of the specific packaging discussed in paragraph 34, *supra*, is likely to cause confusion and mistake and deceive and lead the public to believe that defendants or defendants' products are authorized, endorsed or sponsored by plaintiff or are affiliated in some way with plaintiff or plaintiff's products.

39.    Upon information and belief, defendants' use of Juicy Couture's Sweet Shoppe Trade Dress was deliberate and intentional and designed to create confusion and mistake and to deceive and to lead the public to believe that defendants' goods are genuine Juicy Couture products or are authorized, endorsed or sponsored by Juicy Couture or that defendants or their products are affiliated in some way with Juicy Couture or Juicy Couture's products.

40.    Defendants' use of the Juicy Couture Sweet Shoppe Trade Dress constitutes the use of false designations of origin and false and misleading descriptions and representations as to the source of the products sold, distributed, and offered for sale by defendants and is likely to cause confusion among consumers and to cause them to mistakenly believe that defendants' products are genuine Juicy Couture products or are authorized, endorsed or sponsored by Juicy Couture or that defendants or their products are affiliated in some way with Juicy Couture or Juicy Couture's products.

41.    Plaintiff believes that it is likely to be damaged by defendants' infringing use of Juicy Couture's Sweet Shoppe Trade Dress, false designations, descriptions and representations in that purchasers are likely to buy defendants' products in the mistaken belief that they are genuine Juicy Couture products or that defendants or their products are authorized, endorsed or

sponsored by Juicy Couture or are affiliated in some way with Juicy Couture or Juicy Couture's products.

42.     Defendants' use of Juicy Couture's Sweet Shoppe Trade Dress is without Juicy Couture's license, authorization or permission.

43.     The acts and conduct of defendants complained of herein have damaged plaintiff and, unless restrained, will impair, if not destroy, the value of Juicy Couture's Sweet Shoppe Trade Dress and the goodwill associated therewith.

## COUNT ONE

### FALSE DESIGNATIONS OF ORIGIN AND FALSE DESCRIPTIONS AND REPRESENTATIONS, AND FEDERAL UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT

44.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 43 above, as though fully set forth herein.

45.     The aforesaid acts of defendants constitute the use of the false designations of origin, false descriptions and representations, and federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.     The aforesaid acts of defendants have caused and, unless restrained by this Court, will continue to cause great and irreparable injury to plaintiff.

47.     Plaintiff has no adequate remedy at law.

## COUNT TWO

### UNFAIR AND DECEPTIVE TRADE PRACTICES

48.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 47 above, as though fully set forth herein.

49.    By reason of their deliberate and willful acts as set forth herein, defendants have engaged in deceptive practices in the conduct of their business in violation of New York General Business Law § 349.

50.    The aforesaid acts of defendants have caused and, unless restrained by this Court, will continue to cause great and irreparable injury to plaintiff.

51.    Plaintiff has no adequate remedy at law.

## COUNT THREE

## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

52.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 51 above, as though fully set forth herein.

53.    The aforesaid acts of defendants are intentionally designed to mislead and deceive consumers into thinking that products in defendants' candy-shaped packaging are sponsored, endorsed, or authorized by plaintiff or is in some way affiliated with plaintiff.

54.    Without plaintiff's authorization, defendants have intentionally copied plaintiff's Sweet Shoppe Trade Dress with the purpose of trading on the goodwill and reputation of plaintiff and thereby deceiving the public as to the source and origin of defendants' goods.

55.    Through the manufacture, production, and sale of products in packaging substantially similar to plaintiff's Sweet Shoppe Trade Dress, defendants have engaged in trade dress infringement and unfair competition under the common law in the state of New York.

56.    The aforesaid acts of defendants have caused and, unless restrained by this Court, will continue to cause great and irreparable injury to plaintiff.

57.    Plaintiff has no adequate remedy at law.

WHEREFORE, plaintiff prays for judgment against defendants as follows:

A.    For temporary, preliminary and permanent injunctive relief enjoining defendants, their successors and assigns, suppliers, officers, agents, servants, employees, and attorneys, and all those persons in active concert, participation or privity with them, or any of them:

1.    From using in connection with the manufacture, distribution, advertising, offering for sale and sale of any trade dress or packaging that infringes the Juicy Couture Sweet Shoppe Trade Dress, or any other trade dress which, either alone or in combination, is likely to cause confusion, mistake or deception as to source, origin, sponsorship, endorsement, affiliation or the genuine nature of the products;

2.    From using any false designation of origin or false description or false representation, and from engaging in any act or series of acts which, either alone or in combination, constitute deceptive or unfair methods of competition by defendants with Juicy Couture, or from otherwise interfering with or injuring Juicy Couture's business reputation or impairing the distinctive quality of the Juicy Couture Sweet Shoppe Trade Dress or the goodwill associated therewith;

3.    From doing any other act or thing calculated or likely to cause confusion or mistake in the minds of the trade or the public or to deceive purchasers into mistakenly believing that defendants' goods are Juicy Couture's goods, or come from or are affiliated with Juicy Couture or are sponsored or approved by Juicy Couture, or are from the same source as goods of Juicy Couture, or to otherwise misrepresent the nature, characteristics, qualities or origin of the goods or the commercial activities of defendants.

B.    That defendants be required to deliver up to plaintiff for destruction all apparel and other products packaged in the Juicy Couture Sweet Shoppe Trade Dress, or which infringe

the Juicy Couture Sweet Shoppe Trade Dress, and all drawings, advertisements, pamphlets, brochures, catalogs, labels, tags, signs, prints, packages, wrappers and containers in defendants' possession, custody or control which use or display Juicy Couture's Sweet Shoppe Trade Dress, or which embody or infringe the Juicy Couture Sweet Shoppe Trade Dress.

      C.     That defendants be enjoined and restrained, preliminarily and permanently, from destroying, moving, hiding or otherwise making inaccessible any of the items referred to in paragraph B above.

      D.     That defendants be required to supply plaintiff with complete records concerning any and all transactions related to the manufacture, distribution, sale, display, acquisition, or receipt of any products packaged in the Juicy Couture Sweet Shoppe Trade Dress, or which embody or infringe the Juicy Couture Sweet Shoppe Trade Dress.

      E.     That defendants be required to supply plaintiff with a complete list of all persons with their addresses and any other identification of said persons that is within the possession, custody or control of defendants, from whom defendants purchased or to whom defendants sold any apparel or other products packaged in the Juicy Couture Sweet Shoppe Trade Dress, or which infringe the Juicy Couture Sweet Shoppe Trade Dress, or who participated in the manufacture, distribution, offering for sale or sale of said infringing packaging and products.

      F.     That defendants be required to file with this Court and serve upon plaintiff within thirty (30) days after service of this Court's injunction issued in this action a written report signed under oath by defendants setting forth in detail the manner in which defendants have complied with such injunction.

      G.     That plaintiff be awarded its actual and consequential damages and defendants' profits proximately resulting from defendants' violations.

H.     That plaintiff be awarded three times its actual and consequential damages sustained as a result of defendants' violations, and that plaintiff be awarded three times the defendants' profits arising from its aforesaid acts.

I.     That plaintiff be awarded exemplary and punitive damages against defendants under state law.

J.     That plaintiff be awarded its attorneys' fees and all costs incurred in the representation of plaintiff in this matter.

k.     That the Court grant plaintiff such other and further relief, both general and special, at law and in equity, to which plaintiff may show itself to be entitled, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury of all issues properly triable by jury in this action.

Date:   April 28, 2008                              Respectfully submitted,

                                                    JENNER& BLOCK LLP

                                                    By: _____
                                                    Susan J. Kohlmann (SK1855)
                                                    Elizabeth Valentina (EV4345)
                                                    Joseph J. McFadden (JM9554)
                                                    919 Third Avenue
                                                    New York, New York 10022
                                                    (212) 891-1600
                                                    (212) 891-1699

                                                    *Counsel for Plaintiff, Juicy Couture, Inc.*